IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAVOSHA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 702 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| ILLINOIS BELL TELEPHONE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lavosha Jones has filed a complaint against her former employer, Illinois Bell Telephone Company, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq. (Count One), and 42 U.S.C. § 1981 (Count Two).

Defendant has moved for summary judgment pursuant to Fed. R. Civ. Pro. 56. For the reasons discussed below, defendant's motion is denied.

## BACKGROUND[1]

Plaintiff was employed by defendant as a customer account specialist (CAS) at defendant's National Credit Verification Center (NCVC) from December 2001 to April 2010. During the course of her employment plaintiff held various positions but returned to her role as a CAS in February 2009. While plaintiff held the position of CAS, her duties included handling

---

[1] The following facts are, unless otherwise specified, undisputed and come from the parties' L.R. 56.1 statements. The court notes that the submitted Rule 56 statement and response are inappropriate because both contain argument. Cady v. Sheahan, 467 F.3d 1057, 1060 (7th Cir. 2006) (A party's "statement of material facts [does] not comply with Rule 56.1 [if] it fail[s] to adequately cite the record and [is] filled with irrelevant information, legal arguments, and conjecture[.]"). The court therefore strikes all numbered paragraphs containing argument from the submitted statement and response.

inbound calls for credit verification and dealing with billing issues. Plaintiff was employed in a customer service capacity.

Defendant terminated plaintiff following an incident on March 30, 2010. Defendant alleges that plaintiff was terminated because she mistreated a customer and another employee during a phone call, and that she subsequently hung up on both and lied about having done so. Plaintiff alleges that she was fired in retaliation for filing a racial discrimination charge against her supervisor and a sexual harassment charge against a supervising associate director.

Both parties focus on the time period beginning when plaintiff returned to the CAS position in 2009 and ending with her termination on April 1, 2010. Shortly after plaintiff's return to the CAS position, plaintiff received two suspensions for violating defendant's Code of Business Conduct (COBC). The first occurred on February 25, 2009, when a supervisory employee asked plaintiff to open her phone line to receive incoming calls, and plaintiff declined to do so, apprising the supervisor that her break was scheduled in five minutes. The supervisor repeated her request, and plaintiff did not comply. As a result of this incident, on March 2, 2009, plaintiff was issued a disciplinary notice and a one-day suspension. Plaintiff admits that she was suspended but alleges that she was scheduled as a "reserve agent" on that date and not tasked with working on the phones. She further alleges that it was not defendant's practice to require a CAS to open her phone line shortly before her break.

The second incident took place on March 11, 2009, when plaintiff took a call from a Collections Representative asking plaintiff to speak to a customer to explain that the customer had received an adverse action letter in error. Plaintiff objected to taking the call and the Collections Representative asked to speak with plaintiff's manager. As a result of this incident,

on March 16, 2009, plaintiff was issued a written disciplinary notice and received a three-day suspension. Plaintiff admits she was suspended but alleges that she refused to take the call because she was trained not to take those sorts of calls.

After these two disciplinary notices, plaintiff was transferred to a new team on a new floor in the NCVC where she was supervised by Ramona Shelton. On November 9, 2009, plaintiff received a first written warning from Shelton for unsatisfactory work performance. The warning was based on plaintiff's "compliance" rate, which was 95.71% and therefore under the standard$^2$ of 96%. Plaintiff alleges that other CASs in her department who were not African American had compliance figures below the target. On November 18, 2009, plaintiff filed a charge of discrimination with the Illinois Department of Human Rights alleging race discrimination by Shelton in connection with the written warning she received.$^3$

Plaintiff also alleges that from late 2008 to November 2009, Julian Adams, an associate director and one of her supervisors, sexually harassed her. She filed a charge of sexual harassment with the Illinois Department of Human Rights (IDHR) in December 2009. In March 2010, the IDHR mailed a copy of the charge to Adams at the defendant's Oak Park facility. Adams and his supervisor, Denise Wilson, the Director of Credit and Collections, became aware of the charge on March 18, 2010.

---

$^2$Plaintiff contends that this standard was a "target." Defendant contends that this standard was a "required minimum" standard.

$^3$ Plaintiff's brief on summary judgment only argues retaliation on the basis of the sexual harassment charge, but her complaint alleges retaliation for filing both race discrimination and sexual harassment charges.

3

Two days later, on March 20, 2010, plaintiff was scheduled to work. Plaintiff alleges that she anticipated being late to work due to weather and called her manager to adjust her start time so that she would not be marked tardy. Plaintiff subsequently called the NCVC once more to request a second adjustment to her start time and allegedly received permission. According to plaintiff, she was later informed that she did not have sufficient flex time available to cover the second extension and had been marked tardy. Plaintiff alleges that another individual told her that Adams made the decision to mark her tardy and alleges that she was disciplined in some manner for being tardy. Defendant denies that plaintiff received any discipline for being tardy or that Adams was involved in the incident.

On March 30, 2010, plaintiff received a call from a sales representative within the company named John Clark. Clark had a customer on the line who wanted to reinstate services but was behind in payment, and Clark called plaintiff to obtain an override code to reinstate the customer's services. Plaintiff reported the minimum payment due to Clark, and he brought the customer into the conversation to confirm her desire to make a payment. While Clark and the customer discussed the details, plaintiff remained on the line. After roughly one minute of this conversation, plaintiff broke in to say "so I'm going to drop off the line, okay?" Clark asked whether plaintiff would first take the payment from the customer because he still needed an override code from the NCVC. Plaintiff responded that Clark would not need the code, and Clark disagreed. Plaintiff suggested that Clark continue with the customer and call the NCVC back if he needed a code. Clark asked plaintiff once more to take the payment. Plaintiff asked Clark to put the customer on hold and Clark complied. Plaintiff explained that if she took the payment, Clark would need two override codes from NCVC. Clark advised that he was with the

"Winback" Call Center and questioned why he would call back when he had the NCVC on the phone and plaintiff was able to take the payment and give the code. Plaintiff, who claims that Clark became irritated and acted improperly, began to respond and Clark interrupted to ask to speak to her supervisor. Plaintiff responded "not a problem." At that point, the call ended. Defendant alleges that plaintiff hung up on Clark. Plaintiff claims that she put the call on hold and did not hang up on Clark.

After the call ended, Clark redialed the NCVC and was connected to Juanita Ortiz. Clark told Ortiz that he had been on a call with another CAS, and that the CAS had hung up on him. Clark asked Ortiz to identify which CAS had handled his previous call, and Ortiz gave him plaintiff's employee ID number.

The next day, Clark's manager, Terry Stephens, contacted plaintiff's manger, Johnnie Edwards, regarding the call that had taken place between Clark and plaintiff. Stephens and Edwards reviewed a recording of the call on the Ultra/Verint system, which records all calls to the NCVC. Edwards then contacted Adams, her direct supervisor, who recommended that Edwards request a "cradle to grave" report to determine which party had ended the call.[4] Adams conferred with the human resources and labor relations departments and determined that plaintiff should be suspended pending dismissal. Adams reported this recommendation to Wilson, and she concurred.

---

[4]Plaintiff disputes the availability and accuracy of the cradle to grave report; she contends that a cradle to grave report summarizes a CAS's shift and that she has never seen the type of report defendant describes as a "cradle to grave" report. Besides her unfamiliarity with the report, plaintiff does not offer any evidence to rebut the accuracy of the report.

On April 1, 2010, plaintiff met with Edwards, NCVC manager Maria Ochoa, and a union representative named Val Taylor Davis. The parties reviewed the recording of the March 30 phone call, and plaintiff stated that she had not hung up on Clark. Later that same day, the same parties convened a second meeting. Defendant alleges that plaintiff was informed that she had been suspended pending dismissal. Plaintiff alleges that she was terminated at that meeting.

On April 28, 2010, defendant and the union convened a Review Board meeting where plaintiff and her union representatives made a case for plaintiff to be reinstated instead of discharged. Defendant alleges that Wilson made the decision to terminate plaintiff on that date. Plaintiff alleges that she had already been terminated on April 1, 2010.

## DISCUSSION

### A. Summary Judgment Standard

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Unterreiner v. Volkswagen of Am., Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed.R.Civ.P. 56(c); Becker v. Tenenbaum–Hill Assocs., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services–Milwaukee Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. See Sarsha v. Sears. Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993). The nonmoving party must, however, do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

**B.      Title VII Retaliation and Section 1981 Retaliation Standard**

Plaintiff makes retaliation claims under both Title VII and 42 U.S.C. § 1981. The Seventh Circuit has held that the elements and methods of proof for the two claims are essentially identical, and courts apply the same analysis to the claims. Brown v. Advocate S. Suburban Hospital & Advocate Health & Hospitals Corporation, 700 F.3d 1101, 1104 (7th Cir. 2012). The court will therefore analyze plaintiff's claim under the Title VII standard and apply the same reasoning to the § 1981 claim.

Title VII's anti-retaliation provision makes it unlawful for an employer to "discriminate against" an employee "because he has opposed any practice made an unlawful employment practice" by the statute or "because he has made a charge, testified, assisted, or participated in [a relevant] investigation, proceeding, or hearing." 42 U.S.C. § 2000e–3(a). A plaintiff may

7

establish a prima facie case of retaliation directly or indirectly. Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 644 (7th Cir. 2002). Under the direct method, a plaintiff must offer evidence that she: (1) engaged in a statutorily protected activity; (2) was subjected to an adverse employment action; and (3) a causal connection exists between the two events. Treadwell v. Office of Ill. Sec'y of State, 455 F.3d 778, 781 (7th Cir. 2006). Under the indirect method, a plaintiff must show that: (1) she engaged in protected activity; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) other similarly-situated employees who did not engage in protected activity were treated more favorably. See Mattson v. Caterpillar, Inc., 359 F.3d 885, 888 (7th Cir. 2004).

Successfully establishing a prima facie case creates a rebuttable presumption of retaliation and shifts the burden of proof to the defendant to articulate a legitimate, nonretaliatory reason for the adverse action. Knox v. Indiana, 93 F.3d 1327, 1334 (7th Cir. 1996). If an employer offers a legitimate, non-discriminatory reason for its adverse employment action, the burden shifts back to the plaintiff to present evidence that the employer's non-discriminatory reason is pretextual. Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 394 (7th Cir. 1998).

Defendant argues that it is entitled to summary judgment because plaintiff cannot demonstrate a prima facie case under the direct or indirect method. Under the direct method, defendant argues that plaintiff has failed to demonstrate a causal link between her complaint and her termination. Defendant notes that "mere temporal proximity is not enough to establish a genuine issue of material fact." Tomanovich v. City of Indianapolis, 457 F.3d 656, 665 (7th Cir.

2006). Plaintiff counters[5] that the Seventh Circuit has indicated that a strong temporal link may be evidence of causation. In Loudermilk v. Best Pallet Co., 636 F.3d 312, 315 (7th Cir. 2011), the court noted that the plaintiff was fired one day after he orally voiced a complaint to his supervisor and opined that "[o]ccasionally ... an adverse action comes so close on the heels of a protected act that an inference of causation is sensible." The court also noted that, in such a situation, context is extremely important. Id.

Plaintiff was terminated two weeks after her supervisor was informed of her complaint to the IDHR, but plaintiff alleges that Adams took the first available opportunity to retaliate against her by assessing her tardy two days after learning of her IDHR complaint. Defendant argues that plaintiff admits that she did not know whether she had sufficient flex time to excuse her tardiness, that she has no direct knowledge of who made the decision to charge her with tardiness, and that there is no evidence, other than her own assertion, that she received any discipline in connection with being tardy.

The court agrees that, under the direct method, plaintiff has not demonstrated a causal link between her complaint and termination. Plaintiff relies solely on the temporal proximity between her complaint and the alleged retaliatory action. Although plaintiff argues that the fact that the tardy incident followed immediately after her IDHR complaint is evidence of causation under Loudermilk, plaintiff has presented no evidence that any disciplinary action resulted from the incident. Further, plaintiff has not demonstrated that she was entitled to have her start time

---

[5]The court notes that although plaintiff was granted leave to file a response brief exceeding the fifteen page limit imposed by LR 7.1, the response brief fails to include a table of contents or of cases as required by the Rule. Plaintiff's counsel is reminded to follow this court's Local Rules in the future.

adjusted or that any tardy assessed was improper. The temporal nexus between plaintiff's complaint and her termination is not sufficient by itself to meet plaintiff's burden under the direct method.

Defendant also argues that plaintiff cannot meet her burden under the indirect method because she cannot offer evidence that she was meeting her employer's legitimate expectations or that there were other similarly situated employees who did not engage in protected activity that were treated more favorably. Even if plaintiff can offer a prima facie case, defendant argues that she cannot demonstrate that defendant's purported reason for terminating plaintiff was pretextual. Plaintiff contends that defendant is not entitled to summary judgment because many of the material facts surrounding the retaliation claims are in dispute.

In support of the first point, defendant states that plaintiff had multiple suspensions for CBOC violations and was cited for failing to meet performance standards shortly before her termination. Defendant also notes that plaintiff was immediately suspended, and then terminated, in connection with her allegedly poor performance on a customer service phone call. In response, plaintiff argues that the cited CBOC violations were past the "deactivation date," meaning that they were no longer part of her disciplinary record, and that defendant altered its records to conceal that fact after terminating plaintiff. She also notes instances where supervisors commended plaintiff on meeting her goals and performance standards. Plaintiff further argues that her actions on the March 30, 2010, call were not inappropriate and disputes that she hung up on the customer and Clark.

The question of the "deactivation date" is relevant to both plaintiff's claim that she was meeting performance expectations and that similarly situated individuals were not terminated

10

after incidents of customer mistreatment. On the first point, plaintiff claims that her two violations were past their deactivation dates and therefore could not be considered in determining the discipline appropriate for the March 30, 2010, incident. Plaintiff also notes that during the April 1, 2010, meeting to discuss her performance on that call, her prior record of violations was not discussed at all, and at no point was she told that her suspension was related to her past infractions. Plaintiff contends that defendant has belatedly justified her termination by referencing these prior CBOC violations.

In support of this assertion of mendacity, plaintiff argues that defendant erased deactivation dates from her files and the files of other employees after she was terminated in an effort to "cover its tracks." She points to an email written by Adams in response to an individual in Labor Relations' request for plaintiff's "previous discipline," in which Adams told Wilson that he has "double checked CCA" and "the deactivation dates can be removed" on "those disciplinary entry's [sic] of the Code of Business Code [sic] with deactivation dates." Adams informed Wilson that "per [her] request" he will start removing deactivation dates from "ALL CAS CCA filed with Code of Business Code ... so that this problem won't happen again." Defendant does not present any written company policy on deactivation dates, but relies on testimony from supervisors that COBC violations "remain part of the employee's permanent record." Defendant argues that the deactivation dates were auto-filled information on a disciplinary notice and managers must manually remove the deactivation date for CBOC-related disciplines. The presence of a "deactivation date" on a disciplinary notice for a CBOC violation reflects an oversight by the manager, according to defendant. The email plaintiff points to as evidence of a cover-up is consistent with this practice, defendant argues, because the

deactivation dates should have been removed from those disciplinary entries when they were created. Plaintiff notes, however, that disciplinary letters issued to other employees list a deactivation date and state in the body of the written warning that the warning will be "in effect" until the listed deactivation date.

The deactivation date is also relevant to plaintiff's ability to demonstrate that other similarly-situated individuals who did not file complaints were treated differently. Plaintiff alleges that other employees were not terminated following inappropriate conduct on calls. Defendant argues that plaintiff is essentially in a class of one, because no other individuals who committed CBOC violations had two prior infractions in their files. Defendant preemptively points to other CASs who committed CBOC violations and were disciplined. One, Michelle Avalos, did not engage in protected activity and was terminated following a CBOC violation where she hung up on a sales representative. Defendant identifies three other CASs who did not engage in protected activity (Maria Munoz, Yolanda Patino, and LaToya Jamerson) and released calls but were not terminated. Munoz and Patino each received a Final Written Warning and Jamerson received a one-day suspension, but defendant claims the difference in treatment was warranted because none of the employees had records comparable to plaintiff's. Therefore, whether the deactivation date constitutes a date by which an infraction is removed from an employee's file is material to determining whether plaintiff can identify similarly-situated individuals who were treated differently.[6]

---

[6]Besides the individuals defendant identifies, plaintiff also identifies Juanita Ortiz as a potential comparator because management conceded that Ortiz's follow-up call with Clark did not meet company standards, and plaintiff alleges that Ortiz was not disciplined. In response, defendant argues that there is no evidence that Ortiz was not disciplined and that Ortiz did not
(continued...)

Plaintiff argues that material issue of fact exists regarding the validity of plaintiff's disciplinary notices at the time of her termination, thus defeating defendant's argument that plaintiff has failed to make a prima facie case of retaliation. Further, under the burden-shifting test, plaintiff's disciplinary record is relevant to defendant's proffered reasons for terminating plaintiff. Under the evidence presented, a reasonable jury could find that plaintiff's prior infractions were not active at the time of the March 30, 2010, phone call, that plaintiff was meeting her employer's expectations, and that other similarly-situated employees were not treated in the same manner as plaintiff.

Additionally, plaintiff disputes that her actions on the March 30, 2010, phone call were inappropriate and denies that she hung up on the phone call. A review of the recording does not definitively disprove plaintiff's argument and confirms that a reasonable jury could find that plaintiff did not mishandle the call. Consequently, there is a material fact in dispute that affects plaintiff's claim that defendants proffered reason for her termination is pretextual.

Because questions of material fact exist, the court finds that summary judgment on plaintiff's retaliation claims is inappropriate.

---

[6](...continued)
have a record of CBOC violations comparable to plaintiff's. Defendant also argues that Ortiz's misconduct was making unprofessional comments about a co-worker, which is significantly less serious than mistreating an internal and external customer and hanging up on both.

Plaintiff also identifies Clark as a potential comparator because Clark allegedly acted improperly on the March 30 call and was not disciplined. Defendant argues that neither Adams nor Wilson, who disciplined plaintiff, had authority to administer discipline to Clark. Defendant further points out that in his deposition, Adams stated that he understood that Clark's manager intended to take disciplinary action.

## CONCLUSION

For the reasons described above, the court denies defendant's motion for summary judgment.


**ENTER:**      October 24, 2013

_____
**Robert W. Gettleman
United States District Judge**